**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SCHWARTZCO ENTERPRISES LLC, a New
York Limited Liability Company; THE MEAT
HOUSE-ROSLYN, LLC, a New York Limited
Liability Company; and ARNOLD M.
SCHWARTZ, an individual resident of New
York,

                    Plaintiffs,


                    -against-


TMH MANAGEMENT, LLC, a New
Hampshire Limited Liability Company; TMH
VENTURES, LLC, a New Hampshire Limited
Liability Company; MEAT HOUSE
FRANCHISING, LLC; a New Hampshire
Limited Liability Company; JUSTIN
ROSBERG, an individual resident of New
Hampshire; THOMAS BROWN, an individual
resident of New Hampshire; and KERRY
MILLER, an individual resident of
Massachusetts,

                    Defendants.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
14-CV-1082 (ADS)(GRB)

**APPEARANCES:**

**Brown & Kannady**
*Attorneys for the Plaintiffs*
2000 S. Colorado Blvd.
Suite 2-610
Denver, CO 80222
        By: David J. Meretta, Esq.
            Scott T. Kannady, Esq., Of Counsel

**The Richard Rosen Law Firm, PLLC**
*Attorneys for the Plaintiffs*
110 East 59th Street
23rd Floor
New York, NY 10022
        By:  Richard L. Rosen, Esq.
            John A. Karol, Esq., Of Counsel

1

**Tompkins McGuire Wachenfeld & Barry LLP**
*Attorneys for the Defendant Thomas Brown*
Four Gateway Center 100 Mulberry Street, Suite 5
Newark, NJ 07102
By: William C. Kelly, Esq., Of Counsel

**NO APPEARANCES:**

*The Defendants TMH MANAGEMENT, LLC, a New Hampshire Limited Liability Company;
TMH VENTURES, LLC, a New Hampshire Limited Liability Company; MEAT HOUSE
FRANCHISING, LLC; a New Hampshire Limited Liability Company; JUSTIN ROSBERG, an
individual resident of New Hampshire; and KERRY MILLER, an individual resident of
Massachusetts*

**SPATT, District Judge**.

On February 19, 2014, the Plaintiffs Schwartzco Enterprises, LLC ("Schwartzco"), a
New York limited liability company; the Meat House – Roslyn LLC ("TMH Roslyn"), a New
York limited liability company; and Arnold M. Schwartz, an individual resident of New York
(collectively the "Plaintiffs") filed a complaint containing 17 causes of action against the
Defendants TMH Management, LLC ("TMH Management"); TMH Ventures, LLC ("TMH
Ventures"); Meat Housing Franchising, LLC ("MHF"); Justin Rosberg ("Rosberg"); Thomas
Brown ("Brown"); and Kerry Miller ("Miller")(collectively the "Defendants"). In essence, the
Plaintiffs alleged that the Defendants orchestrated a fraudulent scheme involving the sale of
MHF franchise and area developer rights to the Plaintiffs in violation of certain state franchising
laws and regulations, among other statutes.

Each of the Defendants defaulted, except for Brown, a managing member of MHF. Only
one claim, the fifteenth cause of action sounding in an alleged violation of the New York
Franchise Sales Act, N.Y. Gen. Bus. Law §§ 680, *et seq.* (the "NYFSA"), directly referenced
Brown.

On July 24, 2014, Brown moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 9(b) to dismiss the complaint for failure to plead with the requisite particularity.

On September 19, 2014, the Plaintiffs cross-moved pursuant to Fed. R. Civ. P. 15(a) for leave to file an amended complaint. The proposed amended complaint contains 21 causes of action, none of which are specifically directed toward Brown alone.

In opposing the Plaintiffs' cross-motion to amend the complaint, Brown primarily contests the futility of the proposed causes of action. Indeed, Brown does not argue that the proposed amendment was prompted by bad faith on the part of the Plaintiffs or that the Plaintiffs unduly delayed in seeking leave to amend. Rather, Brown conclusorily asserts that he "would certainly be prejudiced by allowing such an amendment, *which consists no less than 74 pages and often reads as a legal brief*, because it would force him to expend significant additional resources in responding thereto and unnecessarily delay his rightful dismissal from this litigation." (Brown's Reply Br., at 10.) The Court notes that to the extent the proposed amended complaint contains legal arguments, Brown has had ample opportunity to respond to those arguments, thereby minimizing any prejudice.

Where, as here, the Plaintiff seek to amend his complaint while a motion to dismiss is pending, a court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion [to dismiss] as moot to considering the merits of the motion in light of the amended complaint." Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008)(internal quotation marks and alteration omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Annunziato v. Collecto, Inc., 293 F.R.D. 329, 333 (E.D.N.Y. 2013)(citing Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002)). "Therefore a proposed

amendment is not futile if it states a claim upon which relief can be granted." Waltz v. Board of Educ. of Hoosick Falls Cent. School Dist., No. 1:12–CV–0507 (GTS)(CFH), 2013 WL 4811958, *4 (N.D.N.Y. Sept. 10, 2013)(citations omitted).

"As the [P]laintiffs do not seek to add new defendants and [Brown] had sufficient opportunity to respond to the proposed amended complaint, the merits of the motion to dismiss will be considered in light of the proposed amended complaint." Haag v. MVP Health Care, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012). "Indeed, if the proposed amended complaint cannot survive the motion to dismiss, then plaintiffs' cross-motion to amend will be denied as futile." (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)).

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the proposed amended complaint, and construed in a light most favorable to the non-moving parties, the Plaintiffs.

A. The Parties

Schwartz, a surgeon, is the 100% owner of Schwartzco.

The Meat House franchise system includes butcheries that prepare and sell retail meats, fine cheeses, wine, groceries, prepared foods, and other gourmet food items.

TMH Management was established by The Meat House franchise system to manage The Meat House stores and franchises. Rosberg and the non-party Jason Parent ("Parent") are the co-founders and members of TMH Management, and Rosberg is its registered agent.

TMH Ventures was established by The Meat House franchise system to facilitate investment in and development of The Meat House brand. According to a 2012 Franchise Disclosure Documents ("FDDs"), TMH Ventures "is an operations management company created

to undertake joint business ventures with Area Developers in California, Florida, Oklahoma and New York." Rosberg and Brown are co-founders and members of TMH Ventures, and Rosberg is its registered agent.

MHF was established by the Meat House franchise system for the purpose of selling Meat House franchises. MHF is the franchisor and holder of the trademark for The Meat House franchise system. Rosberg is MHF's registered agent. Rosberg is also allegedly a "control" person of MHF under § 691(3) of the NYFSA.

The non-party Parent is the Managing Member and President of MHF and co-founder and member of TMH Management and TMH Ventures. Parent is also allegedly a "control" person of MHF under § 691(3) of the NYFSA.

Brown is the Chief Businesses Development Officer, Executive Vice President of Sales & Marketing, and a Managing Member of MHF, as well as an officer of TMH Management and TMH Ventures. He is a co-founder and member of TMH Ventures. Brown is also allegedly a "control" person of MHF under § 691(3) of the NYFSA.

Miller was another principal of the Meat House, but has since declared bankruptcy. The Plaintiffs are pursuing their claims against Miller in an adversarial bankruptcy proceeding.

B.  Factual History

Beginning in early 2010, the Defendants allegedly pursued Schwartz, the sole investor in Schwartzco, to induce him to invest in acquisition rights to franchise and develop The Meat House stores in Westchester, New York; New York City; and Long Island.

The Defendants allegedly targeted Schwartz through his nephew, Cary Tober, a low-level employee in the Meat House franchise system. The Plaintiffs ultimately invested more than $2 million in The Meat House franchise system.

5

According to the Plaintiffs, the Defendants made "material false misrepresentations (and/or omissions)" verbally and in writing to the Plaintiffs; "used false, inflated, and misleading cherry-picked information, and generated numerous fraudulent financial spreadsheets and financial statements about the Meat House's current business and profitability (including false earnings claims), and what Plaintiffs could expect to generate in New York, with [the] Defendants operating the business." (Proposed Amended Compl. ["Amended Compl."], at ¶ 4.). The Plaintiffs also assert that the Defendants violated the federal franchise disclosure law, including 16 C.F.R. 436 *et seq.* (the "FTC Act"), and the NYFSA by failing to provide sufficient disclosures.

The Plaintiffs point to the individual defendants, including Brown, as "active participants" "independent of the [Defendant] entities" in the fraudulent scheme. (Id. at ¶ 11.)

The Plaintiffs contend that, as a result of the Defendants' fraudulent scheme, they entered into various agreements with certain of the Defendants and opened an area development entity and ultimately one franchised location, TMH-NY, in Roslyn, New York.

Despite the fact that TMY-NY was fully funded by Schwartzo, TMH Ventures reserved a 5% ownership interest for itself and the Defendants appointed TMH Management as its sole "manager." In this way, the Defendants retained equity and control over TMH-NY without bearing any financial risk. The Defendants allegedly abused their fiduciary responsibilities and funneled Schwartz's money towards opening TMH-NY as an expensive "show piece" location unable to operate at a profit.

According to the Plaintiffs, Brown and Rosberg were "directly responsible" for feeding Tober with much of the data that was utilized in misrepresentations to Schwartz, including financial information regarding operational expenses, profits, and build-out costs, in order to

create a false and overly favorable impression of The Meat House franchise system. (Id. at ¶ 70.)

As stated in the proposed amended complaint,

> Brown, Rosberg, and Parent allegedly had access to complete information regarding how each of the franchise and company-owned units were performing, as well as the costs associated with opening and operating a franchise unit. With regard to Brown, he allegedly knew what the true profit and loss information, as well as the true cost of building-out and operating a unit was. He also knew what was permissible under the FTC Act, and the NYFSA, with respect to prohibited "earnings claims," and the requirement for adequate disclosure before offering to sell or selling a franchise (or at least should have known, although ignorance of the law is no excuse). Defendant Brown personally, repeatedly and directly presented Plaintiffs with fraudulent information in order to induce Plaintiffs into entering a joint venture with Defendants, entering into an Area Development Agreement, and multiple Franchise Agreements. Mr. Brown also omitted information from in-person and e-mail discussions with Plaintiffs that rendered the information presented to Plaintiffs materially misleading. Specifically, this information included profit and loss figures, revenue figures, profit margins for specific Meat House locations, anticipated costs including opening and "build out" costs for a new Meat House location, and the profitability and viability of the business as a whole. Mr. Brown was directly involved in providing (or failing to properly provide) Plaintiffs with the required Franchise Disclosure Documents (FDDs) - documents that contained materially false or inaccurate information which he knew to be false. Mr. Brown was involved in the mismanagement of the joint venture (e.g. hired an incompetent manager a full year before it was appropriate to do so; involved himself in daily operations and planning of the joint venture under the Operating Agreement.

(Id. at ¶ 74.)

The Defendants further allegedly extrapolated "averages" from cherry-picked store locations and periods of time; annualized those amounts to create highly inflated revenues and profits; and grossly underestimated costs of opening units in expensive markets by utilizing average rents from locations that were not indicative of what it would cost to operate a franchise in more expensive markets. (Id. at ¶ 76.)

On or about Wednesday, June 16, 2010, Schwartz attended a presentation with approximately ten employees and principals of The Meat House franchise system, including Rosberg, Brown, and Parent. The presentation included representations that the

Meat House locations currently in operation generated in excess of three million dollars in sales per year. Parent, Brown, and Rosberg repeated the statement, alleged to be false, that The Meat House locations had a return on investment ("ROI") of 12% to 20%. Rosberg, Brown, and Parent also "touted a model for multiple units in a given area, suggesting that not only were 10 or 20 units viable in a geographical area (including, Long Island, Mr. Schwartz's then potential "territory"), but that each unit opened, with a ROI of 12 to 20%, would fund the opening of successive units." (Id. at ¶ 90.) The Plaintiffs maintain that Brown "was the individual who orchestrated the meeting and he led a great deal of the discussion that took place," (Id. at ¶ 92.) although they fail to provide significant, if any, detail in this respect.

Following the meeting, Brown emailed Schwartz, stating as follows:

> Arnie,
>
> On behalf of The Meat House crew, thanks very much for taking the trip up and spending time with us. We are highly confident it will prove to be a very worthwhile investment of time and energy.
>
> I will circle back with Cary to make sure you have everything you need for analysis. I believe you do, but if anything else pops up, please do not hesitate to contact me or anyone else on the team. Very much looking forward to the potential of working with you to dominate the NYC/Long Island marketplace…"

(Id. at ¶ 100.)

Schwartz was also encouraged to visit store locations, and he visited one in Avon, Connecticut, which was held out by the Defendants to be a successful store. Brown subsequently emailed Schwartz stating that "Avon's success is certainly indicative of the market opportunity across the board." (Id. at ¶ 96.) Avon has since ceased operations, for reasons unexplained.

In June of 2010, the Defendants forwarded to the Plaintiffs an FDD and then an amended FDD in October of 2010. Item 7 of the 2010 FDD stated that franchisees would be able to open up a franchise location for an investment between $270,000 and $950,000 – amounts which included the $120,000 franchise fee, and which Parent, Brown and Rosberg allegedly knew were not correct. In this regard, the Defendants ultimately spent more than $1.2 million of the Plaintiffs' money to open up the first franchise location on Long Island.

The Plaintiffs contend that the Defendants violated New York, New Hampshire, and federal law when they solicited the Plaintiffs to invest in the franchise system without first providing the Plaintiffs with a FDD.

As a result of the Defendants' solicitations, the Plaintiffs entered into a series of agreements, including (1) a January 20, 2011 joint venture Operating Agreement with the franchisor, (2) a January 20, 2011 Area Development Agreement, (3) a January 20, 2011 Franchise Agreement, and (4) an August 3, 2011 Franchise Agreement.

The Operating Agreement contained an arbitration provision. That provision provides, in pertinent part: "In the event that any dispute should arise among the parties hereto with respect to any matter covered by this Agreement, the parties hereto shall resolve such dispute in accordance with the procedure set forth in this Article XII." The arbitration provision further requires arbitration to be held in Nassau County, New York State, administered by the American Arbitration Association ("AAA"), and held before a single arbitrator.

The Plaintiffs characterize their investment in The Meat House Franchise system as a "financial disaster" for them. (Id. at ¶ 8.) According to the Plaintiffs, the Defendants "drained

Plaintiffs of their money, went far 'over-budget,' mismanaged the only unit that opened (in Roslyn, NY), failed to open multiple units as required by their own agreements, and utilized Plaintiffs' money for the purposes of enriching themselves, and creating an unworkable and expensive 'show piece' location to try and sell other 'would-be' franchisees into buying into the system." (Id.).

According to the Plaintiffs, Brown "ultimately made many of the key decisions concerning the Roslyn location, as he selected key employees of the Roslyn location, was involved in the selection of the location itself (and selling it), and was generally heavily involved in its operations, and in his dual role with the joint venture." (Id. at ¶ 139.)

By October 2012, less than ten months after the opening of the Roslyn Store, the parties, through a termination agreement, agreed to remove TMH management as the manager of that store. (Id. at ¶ 181.)  Thereafter, Schwartzo operated the Roslyn Store.

On January 5, 2014, the Roslyn Store closed operations permanently. (Id. at ¶ 195.)

C.  Procedural History

By letters dated December 20, 2013 and January 6, 2014, the Plaintiffs invoked the dispute resolution provisions of the Operating Agreement and/or other related agreements.  The Defendants did not comply.

On February 19, 2014, the Plaintiffs commenced a separate action against TMH Management, TMH Ventures, Meat House Franchising, LLC, Rosberg, and Brown, entitled Schwartzco Enterprises, LLC et al. v. TMH Management, LLC et al., bearing Index No. U.S.D.C., E.D.N.Y., 2:14-cv-1084 (ADS)(GRB).  The defendants in that action, save for Brown, are in default.

Also, as noted above, on February 19, 2014, the Plaintiffs commenced this action. In this action, Brown is the only defendant not in default.

As noted above, on July 24, 2014, Brown moved to dismiss the complaint as against him for failure to comply with Fed. R. Civ. P. 9(b).

On August 4, 2014, the Plaintiffs commenced an arbitration against the Defendants, including Brown, before the AAA, entitled Scwhartzco Enterprises, LLC, et al. v. TMH Management, LLC et al., AA Case No. 01-14-0001-1207, based on the same transactions and occurrences as alleged here. Brown has declined to participate in that arbitration on the basis that he is a non-signatory to the Operating Agreement. (See Pls' Exh Q, Operating Agreement, Schedule A.)

On August 5, 2014, the Plaintiffs filed a separate action in the Federal District Court for the Eastern District of New York against Parent under the index no. 14-cv-4631. That case was deemed related to this case, and subsequently assigned to this Court.

By letter dated August 7, 2014, in this action, the Plaintiffs asked the Court to hold Brown's motion to dismiss in abeyance until resolution of their anticipated application to stay this action pending arbitration.

On August 12, 2014, the Court denied that request.

On September 19, 2014, the Plaintiffs moved pursuant to Fed. R. Civ. P. 15(a) for leave to a file an amended complaint. Although the Plaintiffs also respond to Brown's motion to dismiss, the Plaintiffs seek to reserve their rights to move to stay this action and/or compel Brown to arbitrate their claims.

The proposed amended complaint includes causes of action for (1) fraudulent inducement/omission; (2) fraud; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5)

aiding and abetting fraud; (6) civil conspiracy; (7) breach of contract; (8) gross negligence; (9) violations of the NYFSA; (10) violations of the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349(a) (the "NYCPA"); (11) violations of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. Ch. 358–A (the "NHCPA"); and (12) breach of the covenant of good faith and fair dealing. Each of these causes of action is proposed to be asserted against Brown, except for the breach of contract action, presumably because Brown is a non-signatory to the Operating Agreement.

## II. DISCUSSION

A. The Legal Standard on a Motion to Dismiss

Although Brown's motion is not formally styled under Fed. R. Civ. P. 12(b)(6), in light of the necessary futility analysis below, the rules applicable to motions made thereunder are applicable here.

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of Plaintiff. Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir.1995). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45–46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although heightened factual pleading is not the new standard,

Twombly holds that a "formulaic recitation of cause of action's elements will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, at 555.

A pleading need not contain "'detailed factual allegations,' "but must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, at 678, quoting Twombly, at 555 (other citations omitted). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, at 679. Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, at 679. A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, at 678–679.

This liberal pleading standard is modified by Rule 9(b), which requires a plaintiff asserting fraud claims to meet a heightened pleading standard. While Rule 8(a) usually requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), a plaintiff asserting fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied when the complaint specifies "the time, place, speaker, and content of the alleged misrepresentations;" how the misrepresentations were fraudulent; and the details that "'give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013)(quoting Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)).

However, under Rule 9(b) "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Nonetheless, "plaintiff[s] must allege facts that give rise to a strong inference of fraudulent intent." <u>Nakahata v. New York-Presbyterian Healthcare Sys., Inc.</u>, 723 F.3d 192, 198 (2d Cir. 2013)(citation omitted); <u>see also</u> <u>Acito v. IMCERA Group, Inc.</u>, 47 F.3d 47, 52 (2d Cir. 1995). The inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290–91 (2d Cir. 2006)(citation omitted).

B. <u>The Fraud and Fraudulent Inducement Claims</u>

Under New York law, to state a claim for fraud, a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff. <u>Wynn v. AC Rochester</u>, 273 F.3d 153, 156 (2d Cir. 2001). Similarly, under New York law, an action for fraudulent inducement requires the demonstration of: "(1) a material misrepresentation or omission that induced the party to sign the contract; (2) scienter; (3) reliance; and (4) injury." <u>Davidowitz v. Partridge</u>, No. 08 CV 6962 (NRB), 2010 WL 5186803, at *7 (S.D.N.Y. Dec. 7, 2010).

As the Plaintiffs concede, claims of fraud must be pled with particularity and "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>Rombach v. Chang</u>, 355 F.3d 164, 170 (2d Cir. 2004). Of course, Rule 9(b) does not displace Rule 8(a); rather, the Court must "balance[] the requirements of Rule 9(b) and their overall

purposes with the requirements of notice pleading under Rule 8(a)." Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 00 CIV. 8688 (WHP), 2003 WL 22218643, at *6 (S.D.N.Y. Sept. 25, 2003); Int'l Motor Sports Group. Inc. v. Gordon, No. 98 Civ. 5611 (MBM), 1999 WL 619633, at *3 (S.D.N.Y. Aug. 19, 1999)("Indeed, in analyzing the sufficiency of a pleading under Rule 9(b), a district court must balance the rule with both Fed, R. Civ. P. 8(a), which requires only a 'short and plain statement' of the claims for relief, and Fed. R. Civ. P. 8(f), which provides that 'all pleadings shall be so construed as to do substantial justice.'").

Here, in the Court's view, there is little doubt that the Plaintiffs adequately allege *scienter*, intent to induce reliance; reasonable reliance, and injury. The closer question concerns whether Plaintiffs have adequately pleaded misreprestantions or omissions of material fact with the requisite specificity. The Court finds that they have not.

The Court acknowledges the various emails, spreadsheets, and power-point files that the Plaintiffs contend contained falsified or misleading figures regarding the profitability of The Meat House franchise system (Amended Compl., at ¶ 105.) The Court further recognizes that while the Plaintiffs do not set forth specifics as to Brown's individual role in the alleged fraudulent scheme – the proposed amended complaint is peppered with the following terms: "defendants"; "individual defendants;" "The Meat House Parties;" and the "Meat House Princip[als]" and when the Plaintiffs attempt to set forth specific names, they repeatedly do so through collective phrases such as "Mr. Parent, Mr. Brown, and Mr. Rosberg" – this type of "group pleading" is appropriate where, as here, the Plaintiffs seeks to state a common law fraud claim, as opposed to a federal securities law claim. Am. Fin. Int'l Group–Asia v. Bennett, No. 05 Civ. 8988 (GEL), 2007 WL 1732427, at *7 (S.D.N.Y. June 14, 2007)(finding, in federal securities case, that the plaintiffs could not "rely upon blanket references to acts or omissions by

all of the defendants, for each defendant named in the complaint is entitled to be [apprised] of the circumstances surrounding the fraudulent conduct with which he individually stands charged" and Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)(in federal securities case, Rule 9(b) "is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); but see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91 CIV. 2923 (CSH), 1994 WL 88129, at *20 (S.D.N.Y. Mar. 15, 1994)(holding that the "vice of group pleading" warranted dismissal of the common law fraud claims).

However, it does not follow that Rule 9(b) grants an aggrieved party "license to base claims of fraud on speculation and conclusory allegations." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Nor are the Plaintiffs relieved of their obligation, at this stage of the litigation, to adequately allege "how" and/or "why" the statements were fraudulent. See Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud[.]")

In this regard, the Court finds that while the Plaintiffs have identified a number of financial figures in emails and spreadsheets which they contend were fraudulent in content, they fail to plead the circumstances constituting the fraud with the specificity required of Rule 9(b). In other words, while the Plaintiffs identify the "who" – albeit in collective terms; the "what;" and the "when" of the fraudulent scheme, they fail to adequately allege "how" and/or "why" the relevant statements or representations were fraudulent, conclusory assertions notwithstanding. For example, the Plaintiffs maintain that the Defendants' representations to them relied on faulty "assumptions;" "misrepresentative sampling" and "cherry picked data" (Amended Compl., at ¶ 104.) but do little, if anything, to point to specific numbers that were falsified or misleading.

Rather, the Plaintiffs cast an exceedingly wide net. According to the Plaintiffs, it seems each single figure fed to them by the Defendants was fraudulent. However, this "everything but

the kitchen sink" pleading, which does little to explain the ways certain figures touted by the Defendants were inflated or distorted, is insufficient under the heightened pleading requirements of Rule 9(b).

Of importance, Fed. R. Civ. P. 9(b) "is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." In re Bristol–Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 556 (S.D.N.Y. 2004)(quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)(internal quotation marks omitted).

In this case, the concern about "fair notice" applies with full force. The original complaint is 32 pages and 161 paragraphs in length.  In the face of a motion to dismiss based on their alleged failure to comply with Rule 9(b), the Plaintiffs seek to rely on the proposed amended complaint, which is 74 pages and 308 paragraphs in length, replete with repetitive and conclusory allegations.  Tellingly, the paragraphs specific to the fraudulent inducement and fraud causes of action number, respectively, in the single digits.  However, the proposed amended complaint does little, if anything, to build on the initial complaint in terms of alleging the "how" or "why" of the alleged fraudulent scheme.  Faced with the Plaintiffs' pleading treatise, it is little wonder that Brown, in his reply papers, can muster few substantive arguments against the Plaintiffs' claims sounding in fraud aside from those based on Rule 9(b).

To be clear, the Court is not imposing, nor could it, a requirement on the Plaintiffs that they must plead with absolute precision the "how" or "why" the relevant statements or representations were fraudulent.  Without access to the Defendants' books or to meaningful discovery, the Court cannot conceive how the Plaintiffs could provide details with such precision.

The Court also acknowledges that those allegations of fraud based on "information or belief" may be sufficient under Rule 9(b) if they are based on matters "peculiarly within the opposing party's knowledge." Lichtenstein v. Reassure Am. Life Ins. Co., No. 07-CV-1653 (DLI)(LB), 2009 WL 792080, at *7 (E.D.N.Y. Mar. 23, 2009). However, in so pleading, such allegations must be "accompanied by a statement of facts upon which the belief is founded." Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2d Cir. 1986)(quoting Schlick v. Penn–Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir. 1974)); N.B. Garments (PVT), Ltd. v. Kids Int'l Corp., No. 03 CIV. 8041 (HB), 2004 WL 444555, at *2 (S.D.N.Y. Mar. 10, 2004)("A complaint . . . which fails to adduce any specific facts supporting an inference of knowledgeable participation in the alleged fraud, will not satisfy even a relaxed standard.")(citing Devaney v. Chester, 813 F.2d 566, 569 (2d Cir. 1987)).

Here, the Plaintiffs fail to satisfy even this relaxed standard. Most of the Plaintiffs' allegations based on "information and belief" smack of conclusoriness. (See e.g. Amended Compl., at ¶ 61. ("Upon information and belief, the Meat House, desperate for money, was actually seeking to quickly develop a location in New York, for the purposes of selling franchises, which would be an attractive "show piece" for 'would-be' franchisees in the area. Therefore, upon information and belief, Defendants were more concerned with themselves than operating)(emphasis added); id. at ¶ 68. ("Upon information and belief, [Tober was used] for the purposes of increasing the level of trust Mr. Schwartz had and further the Meat House's fraudulent scheme.")(emphasis added); id. at ¶ 70. ("Mr. Brown, and Mr. Rosberg were each directly responsible for providing Mr. Tober with much of the data that was utilized in the misrepresentations (detailed below), including financial information regarding operational expenses, profits, build-out costs, of the various Meat House store locations, for use, upon

information and belief, to create a false and overly favorable impression of the Meat House.")(emphasis added); id. at ¶ 75. ("Upon information and belief, each of Rosberg, Brown, and Mr. Parent (along with another executive, Mr. Miller) would, at various times, participate in reviewing the data that they had available, and then manipulated it so as to make it look far more positive than it actually was.")(emphasis added); id. at ¶ 91 (In addition, each of the Meat House principals and employees, including Mr. Parent, Mr. Brown, and Mr. Rosberg, sat through the presentation, and upon information and belief, knew that the data in the presentations was materially false and misleading, but failed to disclose material information that was omitted which was contrary to the presentation.")(emphasis added); id. at ¶ 93 ("As noted above, Mr. Parent, Mr. Brown, and Mr. Rosberg were also responsible for the data used in the presentation from an operations perspective, as well as for the labor costs and personnel information. Therefore, upon information and belief, each knew the information being presented was either false, or materially misleading, or omitted material facts and information, and intended that it be delivered in such a fashion to Mr. Schwartz.")(emphasis added); id. at ¶ 98. ("Upon information and belief, Mr. Brown and Mr. Rosberg, and occasionally Mr. Miller and Mr. Parent, were responsible for supplying the data used in the creation of the power-point presentation containing the materially false information.")(emphasis added)).

Two examples warrant special attention. First, the Plaintiffs allege "[u]pon information and belief, [the] Defendants had a second set of books, or figures, that they kept to themselves, indicating the true value of their franchise, and what the typical units were making." (Id. at ¶ 79.). However, the Plaintiffs provide no "statement of facts" supporting this serious accusation.

Similarly, the Plaintiffs allege that "[u]pon information and belief, prior to the solicitation and fraudulent inducement of Mr. Schwartz, the individual Defendants engaged in the same

pattern of concocting overly 'rosy' financial spreadsheets, touting profitability, and then extrapolating what a prospective franchisor could expect to "earn" based upon that false data, and sending it, or otherwise showing it, to other prospective franchisees. In other words, Mr. Schwartz was not the first person that the individual Defendants engaged in the same practice with." (Id. at ¶ 91)(emphasis added). However, this far-reaching accusation, devoid of a supporting "statement of facts," could lead to precisely the type of improvident reputation harming that Rule 9(b) is designed to discourage.

To be sure, the Court is mindful of the fact that, in fraud cases, the financial information supporting the allegations of fraud are typically in the possession of the party that allegedly engaged in a fraudulent scheme. However, this inevitability in fraud cases does not relieve a plaintiff from complying with the heightened pleading requirements of Rule 9(b).

Nor are Plaintiffs' claims sounding in fraud salvaged by Schwartz's affidavit submitted in opposition to Brown's motion to dismiss. In a typical Rule 12(b)(6) motion, the Court is limited to consideration of the pleadings and documents incorporated in or annexed thereto. The scenario in a Rule 9(b) context is no different. Work While U-Wait, Inc. v. Teleasy Corp., No. CIV.A. 2:07-00266 (DAF), 2007 WL 3125269, at *7 (S.D.W. Va. Oct. 24, 2007)("it is the allegations contained in the complaint that must meet Rule 9(b)'s pleading standard.")(citing Miller v. Gain Fin., Inc., 995 F.2d 706, 709 (7th Cir. 1993)). For this reason, the Plaintiffs cannot rely on Schwartz's affidavit to rectify any lack of particularity in the proposed amended complaint.

Furthermore, even if the Court construed the allegations against Brown contained in Schwartz's affidavit as if they were contained in the proposed amended complaint, the Court would nonetheless find that the Plaintiffs fail to satisfy Fed. R. Civ. P. 9(b) with respect to their

fraud and fraudulent inducement claims. Schwartz's affidavit characterizes Brown as "the consummate salesman" and "mouthpiece" for the Defendants (Scwhartz Affid., at ¶¶ 6, 53); accuses him of "personally" providing him with false and misleading information concerning The Meat House franchise system, although he concedes that Brown was not personally sending the emails that allegedly contain falsified information, (id. at ¶¶ 7, 37.); describes him as "vocal" about the potential profitability of the franchise system, (id. at ¶ 27.); and states that Tober related to him that Brown and Rosberg provided much of the faulty information supporting the various financial models (id. at ¶ 33.). These "allegations" do little, if anything, to build upon the paucity of allegations in the proposed amended complaint of "how" and/or "why" the relevant representations and statements were fraudulent.

For the foregoing reasons, the Court finds that the Plaintiffs' proposed causes of actions sounding in fraud and fraudulent inducement against Brown are subject to dismissal under Fed. R. Civ. P. 9(b).

Finally, given that the Plaintiffs attempted to cure any defects in their initial complaint with respect to these claims but have still failed to state a claim for relief, the Court declines to afford the Plaintiff an opportunity to replead these claims. See Foman v. Davis, 371 U.S. 178, 182 (1962)(denial of leave to amend is appropriate if there is "repeated failure to cure deficiencies by amendments previously allowed"); Bd. of Tr. of City of Ft. Lauderdale Gen. Emps. Ret. Sys. V. Mechel OAO, 811 F. Supp. 2d 853, 883 (S.D.N.Y. 2011)(denying leave to replead when the "[p]laintiffs have already amended their Complaint twice in this matter, most recently following a pre-motion conference on the instant motion to dismiss."), aff'd sub nom. Frederick v. Mechel OAO, 475 Fed. Appx. 353 (2d Cir. Apr. 11, 2012)(summary order); In re

Eaton Vance Mut. Funds, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005)(denying leave to amend when the plaintiffs were given previous opportunity to cure pleading defects).

C. The Negligent Misrepresentation Claim

To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that "(1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information given." LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, ——F. Supp. 2d ——, ——, 12 CIV. 7311, 2014 WL 1303133 at *17 (S.D.N.Y. Mar. 31, 2014)(quoting Saltz v. First Frontier, LP, 782 F. Supp. 2d 61, 82 (S.D.N.Y. 2010)(internal citations omitted), aff'd, 485 Fed. Appx. 461 (2d Cir. 2012)).

In this case, the overarching claim of fraud permeates several of the claims for relief, including the claim for negligent misrepresentation under New York law. The Court notes that "whether Rule 9(b) applies to negligent misrepresentation claims divides the circuit courts of appeals." Denver Health & Hosp. Auth. V. Beverage Distributors Co., LLC, 843 F. Supp. 2d 1171, 1177 (D. Colo. 2012) aff'd, 546 F. App'x 742 (10th Cir. 2013).

In this circuit, in recent years, many district courts have proceeded on the assumption that "the Second Circuit has not explicitly ruled on whether Rule 9(b), Fed. R. Civ. P. applies to New York negligent misrepresentation claims." J & R Electronics Inc. v. Bus. & Decision N. Am., Inc., No. 12 CIV. 7497 (PKC), 2013 WL 5203134, at *6 (S.D.N.Y. Sept. 16, 2013); see also Ebusinessware, Inc. v. Technology Services Group, No. 08 Civ. 09101 (PKC), 2009 WL 5179535, at *13 (S.D.N.Y. 2009)(stating that the Second Circuit has left open the question of whether Rule 9(b) applies to negligent misrepresentation claims). In so assuming, nearly all these decisions have relied on Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of

N.Y., 375 F.3d 168, 188 (2d Cir. 2004), wherein the Second Circuit stated that "Rule 9(b) may or may not apply to a state law claim for negligent misrepresentations." Id. at 188.

Perceiving Second Circuit law on this issue to be unsettled, most courts have opted to apply Rule 9(b) to the negligent misrepresentation claim at issue, Ebusinessware, 2009 WL 5179535, at *13; accord DeBlasio v. Merrill Lynch & Co., Inc., No. 07–0318 (RJS), 2009 WL 2242605, at *12 (S.D.N.Y. July 27, 2009)(same); Welch v. TD Ameritrade Holding Corp., No. 07–6904 (RJS), 2009 WL 2356131, at *23 (S.D.N.Y. July 27, 2009)(same). This view is in keeping with the approach, acknowledged in Eternity Global, 375 F.3d at 188, taken by a majority of courts pre-Eternity Global. See e.g. In re Leslie Fay Cos., Inc. Securities Litig., 918 F. Supp. 749, 767 (S.D.N.Y. 1996). Some courts have applied, or declined to apply, Rule 9(b) to such claims only after a closer review of whether the claim, in fact, resembled or did not resemble a fraud claim. Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d 229, 254-55 (S.D.N.Y. 2011)("Even if Rule 9(b) does not apply to all negligent misrepresentation claims, in cases where, as here, the negligent misrepresentation claim is based on the same set of facts as those upon which a fraud claim is grounded, Rule 9(b) applies to the negligent misrepresentation claim as well."); accord Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc., No. 07–0608 (RJD)(JO), 2009 WL 1033177, at *7 n. 9 (E.D.N.Y. Apr. 16, 2009); cf. Amos v. Biogen Idec Inc., No. 13-CV-6375 (MAT), 2014 WL 2882104, at *6 (W.D.N.Y. June 25, 2014)("Because plaintiff's negligent misrepresentation claim does not rely on proof of fraud, I decline to impose a heightened pleading standard on plaintiff's claim of negligent misrepresentation, and deny defendant's motion to dismiss that claim."). Finally, some courts have declined, where possible, to rule on this issue altogether. See e.g. J & R Electronics Inc. v. Bus. & Decision N. Am., Inc., No. 12 CIV. 7497 (PKC), 2013 WL 5203134, at *6 (S.D.N.Y. Sept. 16, 2013)("Because the

defendant has not raised Rule 9(b), the Court addresses plaintiff's negligent misrepresentation

claims under Rule 8(a), Fed. R. Civ. P."),

However, the aforementioned cases all engaged in unnecessary handwringing in light of

post-Eternity Global Second Circuit precedent on this issue, namely Aetna Cas. & Sur. Co. v.

Aniero Concrete Co., 404 F.3d 566 (2d Cir. 2005). In that case, the Second Circuit concluded in

no uncertain terms, albeit without much in the way of explanation, that claims for negligent

misrepresentation under New York law "must be pled in accordance with the specificity criteria

of Rule 9(b)." Id. at 583. This conclusion was not surprising given that negligent

misrepresentation is often characterized as a "species of fraud," Official Comm. Of Unsecured

Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 00 CIV. 8688 (WHP), 2002 WL

362794, at *16 (S.D.N.Y. Mar. 6, 2002)(citation and quotation marks omitted), with the caveat

"that instead of having to prove *scienter*, a plaintiff must prove that there was a 'special

relationship' between the parties which imposed upon the defendant a duty to 'speak with care.'"

Banco de La Republica de Colombia v. Bank of New York Mellon, No. 10 CIV. 536 (AKH),

2013 WL 3871419, at *10 (S.D.N.Y. July 26, 2013)(italics added).

Regardless of the muddled history in this circuit concerning the question whether Rule

9(b) applies to claims for negligent misrepresentation under New York law, it is clear that Aetna

now controls, and, for that reason, the Court will subject the Plaintiffs' negligent

misrepresentation claim under New York law to Rule 9(b) scrutiny. However, the Court finds

that the Plaintiffs' proposed claim for negligent misrepresentation against Brown withstands

Rule 9(b) scrutiny.

First, the Plaintiffs adequately plead that the Defendants made negligent

misrepresentations to them and that they reasonably relied on these misrepresentations. The fact

that Brown may not have made any of the alleged misrepresentations himself does not absolve him, as a matter of law, for liability for negligent misrepresentations. "While it is settled that '[t]he group pleading doctrine is an exception to the requirement that the fraudulent acts of each defendant be identified separately in the complaint,' this does not imply that the group pleading doctrine applies only to fraud claims; rather, it applies whenever Rule 9(b) applies, which is whenever the alleged conduct of defendants is fraudulent in nature. Because negligent misrepresentation is a type of fraud, the group pleading doctrine does apply to negligent misrepresentation claims." King Cnty., Wash. V. IKB Deutsche Industriebank AG, 311 (S.D.N.Y. 2012)(citing Elliott Associates, L.P. v. Hayes, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000), reconsideration denied, 863 F. Supp. 2d 317 (S.D.N.Y. 2012) and rev'd in part, No. 09 CIV. 8387 (SAS), 2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012).

Turning to whether the Plaintiffs adequately plead that they "stood in some special relationship [with the Defendants] imposing a duty of care on the [Defendant's] to render accurate information," courts "have proceeded with marked caution because, under New York law, 'determining whether a special relationship exists ordinarily requires a fact-intensive, case-by-case inquiry.'" Tomoka Re Holdings, Inc. v. Loughlin, No. 03 CIV. 4904 (NRB), 2004 WL 1118178, at *6 (S.D.N.Y. May 19, 2004)(citation omitted); In re Vivendi Universal, S.A., Nos. 02–5571 (RJH), 03–2175 (RJH), 2004 WL 876050, *13 (S.D.N.Y. April 22, 2004)(denying the motion to dismiss claim because negotiated corporate acquisition potentially gave rise to special relationship); see also Grupo Sistemas Integrales de Telecomunicacion de C.V. v. AT & T Communications, Inc., No. 92–7862 (KMW), 1996 WL 312535, at *9 (S.D.N.Y. June 10, 1996)("[T]hose courts that have found, applying New York law, that no special relationship existed have typically done so, not at the pleading stage, but after trial, on the basis that plaintiffs

failed to carry their evidentiary burden."); <u>Polycast Technology Corp. v. Uniroyal, Inc.</u>, No. 87 Civ. 3297 (JMW), 1988 WL 96586, at *12 (S.D.N.Y. August 31, 1988)(special relationship inferred from extended negotiation period between the parties prior to the transaction, the seller's assurances as to the earnings projections, and the seller's superior information about the subject of the transaction).

In making this determination, courts consider three factors: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." <u>Suez Equity Investors, L.P. v. Toronto–Dominion Bank</u>, 250 F.3d 87, 103 (2d Cir. 2001); <u>Williamson v. Stryker Corp.</u>, 12 CIV. 7083 (CM), 2013 WL 3833081 (S.D.N.Y. July 23, 2013)(reciting <u>Suez</u> factors). "Strong allegations on the first and third factors can overcome weak pleading of the second, somewhat circular factor." <u>LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC</u>, 10 F. Supp. 3d 504, 525 (S.D.N.Y. 2014)(citing <u>Suez</u>, 250 F.3d at 103).

Here, the Plaintiffs have sufficiently alleged that the Defendants held a unique and special expertise with respect to The Meat House Franchise system; that the Plaintiffs, as a prospective participant in that system, had a special relationship of trust with the Defendants, and that the Defendants were aware that their statements regarding The Meat House franchise system would be relied upon by the Plaintiffs. <u>See</u> <u>Hughes v. Ester C Co.</u>, 930 F. Supp. 2d 439, 475 (E.D.N.Y. 2013)(vitamin manufacturer held special relationship with vitamin consumers where manufacturer portrayed itself as holding special expertise with regard to the purported health benefits of vitamins it sold); <u>see also</u> <u>Amos</u>, 2014 WL 2882104, at *5.

The Court notes that a "special relationship" is more likely to exist if, as here, the misrepresented facts were "peculiarly within the Defendant[s'] knowledge." LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, No. 12 CIV. 7311 (JPO), 2014 WL 1303133 (S.D.N.Y. Mar. 31, 2014)(citing Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co., 821 F. Supp. 2d 616, 624 (S.D.N.Y. 2011)(dismissing the negligent misrepresentation claims in part because the plaintiff failed to plausibly allege that misrepresented facts were within the defendant's peculiar knowledge).

Accordingly, the Court finds that the Plaintiffs' proposed causes of actions sounding in negligent misrepresentation against Brown are not subject to dismissal under Fed. R. Civ. P. 9(b) and that part of the Plaintiffs' cross-motion for leave to amend to assert that claim is granted.

D.  The Breach of Fiduciary Duty Claims

The Plaintiffs raise a number of claims sounding in breach of fiduciary duty against Brown.

Under New York law, the elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011)(citations omitted).  "A fiduciary relationship exists under New York law 'when one . . . is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" Childers v. New York and Presbyterian Hosp., Nos. 13 Civ. 5414 (LGS), 13 Civ. 5899 (LGS), 2014 WL 2815676, *9 (S.D.N.Y. 2014)(citing Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991)(other citations omitted)).

As a preliminary matter, the Court notes that, as is the case with claims for negligent misrepresentation, "[f]iduciary-duty claims not sounding in fraud are not subject to Rule 9(b)'s

heightened pleading standard." Gardner v. Major Auto. Companies, Inc., No. 11-CV-1664

(FB)(VMS), 2014 WL 4660850, at *2 (E.D.N.Y. Sept. 18, 2014); Adelphia Recovery Trust v.

Bank of Am., N.A., 624 F. Supp. 2d 292, 319 (S.D.N.Y. 2009)("[W]hen a breach of fiduciary

duty claim is, in substance, a claim of fraud, the requirements of Rule 9(b) are triggered.")(citing

Strougo on Behalf of Brazil Fund, Inc. v. Scudder, Stevens & Clark, Inc., 964 F. Supp. 783, 804

(S.D.N.Y. 1997)); see In re Grumman Olson Indus., Inc., 329 B.R. 411, 429 (Bankr. S.D.N.Y.

2005)(Fraud, *per se*, is not an element of a claim for breach of fiduciary duty.  Nevertheless, the

allegations must satisfy Fed. R. Civ. P. 9(b) if the claim is based on fraudulent conduct."); Rahl

v. Bande, 328 B.R. 387, 413 (S.D.N.Y. 2005)(Rule 9(b) did not apply to the claim that the

"defendants breached their fiduciary  duties by deepening [the debtor's] insolvency to enhance

their personal wealth" but did apply to the breach of fiduciary duty claim based on issuance of

false financial statements).  In this regard, the Second Circuit has instructed that the "wording [of

Rule 9(b)] is cast in terms of conduct alleged, and is not limited to allegations styled or

denominated as fraud or expressed in terms of the constituent elements of a fraud cause of

action." Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004).  Stated otherwise, where form

and substance conflict, substance prevails.

   With this principle in mind, the Court finds that the Plaintiffs' proposed claims for breach

of fiduciary duty sound in fraud.  Granted, "not every claim based on dishonesty necessarily

sounds in fraud," In re Grumman Olson Indus., Inc., 329 B.R. 411, 430 (Bankr. S.D.N.Y. 2005).

However, here, in raising a breach of fiduciary duty claim, the Plaintiffs allege, among other

things, that the Defendants "commit[ed] commercial fraud by furnishing false or materially

misleading financial representations to the Plaintiffs which they knew or should have known

were untrue and which they did not have any factual support for making, which Plaintiffs relied

upon to their detriment in entering into the August 2011 Franchise Agreement." (Amended Comp., at ¶ 235.). In this way, the Plaintiffs brand the Defendants as liars, not thieves, and, therefore, the pleading requirements imposed by Fed. F. Civ. P. 9(b) do apply. Cf. In re Grumman, 329 B.R. at 430 ("the Amended Complaint brands the defendants as thieves, not liars, and the pleading requirements imposed by FED.R.CIV.P. 9(b) do not apply.").

For this reason, the fact that the Plaintiffs engage in "group pleading" is not, by itself, fatal to their proposed breach of fiduciary duty claims. "[T]he group pleading doctrine applies to breach of fiduciary duty claims that are rooted in fraud, as is the case here." King Cnty., Wash., 863 F. Supp. 2d at 311; see Adelphia Recovery Trust v. Bank of America, N.A., 624 F.Supp.2d 292, 319–20 (S.D.N.Y. 2009)("The breach of the fiduciary duty in this case is firmly rooted in fraud. . . . [T]his Court finds group pleading is appropriate.").

Nor are the Plaintiffs' claims in this regard barred simply because each of the allegations supporting the breach of fiduciary duty claims mirror those supporting the Plaintiffs' breach of contract claims. Notably, the Plaintiffs allege that Brown owed a fiduciary duty to Schwartzco "pursuant to the Operating Agreement, (Amended Compl., at ¶ 225.) and breached his fiduciary duty "by making warranties and representations under the Operating Agreement" and by "breaching the Operating Agreement." (id. at ¶ 228, 233.).

Typically, "[w]here a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract" and must be dismissed. Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publ'g Co., 580 F. Supp. 2d 285, 294–95 (S.D.N.Y. 2008)(citing Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc., 253 F. Supp. 2d 643, 649–50 (S.D.N.Y. 2003) and Brooks v. Key Trust Co. Nat'l Ass'n, 26 A.D.3d 628, 809 N.Y.S.2d 270, 272 (3d Dep't 2006)); accord Northern

29

Shipping Funds I, LLC v. Icon Capital Corp., 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013);

Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc., 837 F. Supp. 2d 162, 196

(S.D.N.Y. 2011)("In New York, a cause of action for breach of fiduciary duty which is merely

duplicative of a breach of contract claim cannot stand.")(citation omitted).

However, the rule barring duplicative claims of breach of fiduciary duty and breach of

contract is only applicable where the two claims are asserted against a common defendant. See

Sun Products Corp. v. Bruch, No. 10 CIV. 4816 (SAS), 2011 WL 5120307, at *5 (S.D.N.Y. Oct.

28, 2011)("The rule barring duplicative claims of fraud and breach of contract is only applicable

where the two claims are asserted against a common defendant"), aff'd, 507 F. App'x 46 (2d Cir.

2013).  Thus, where, as here, the breach of contract claims are not asserted against Brown, the

breach of fiduciary duty claims asserted against him cannot be dismissed as duplicative of the

breach of contract claims.

Nonetheless, the Court is of the view that the Plaintiffs' proposed breach of fiduciary

duty claims fail as a matter of law because the Plaintiffs have not plead with particularity the

existence of a fiduciary duty between Brown and them.  As noted above, according to the

proposed amended complaint, Brown owed a fiduciary duty to Scwhartzo "pursuant to the

Operating Agreement." (Amended Compl., at ¶ 225.)  However, the Plaintiffs cite no authority,

and the Court has uncovered none, that a non-signatory, such as Brown, to a contract may be

liable for breach of a fiduciary duty arising out of that contract.  Further, even if a non-signatory

could be held liable in this way, the Plaintiffs point to no specific language of the Operating

Agreement triggering such a duty.  Accordingly, the Court dismisses the Plaintiffs' claims

against Brown for breach of fiduciary duty.

Although the Court has found that the Plaintiffs adequately alleged a "special relationship" with the Defendants, including Brown, for purposes of their negligent misrepresentation claim, the Plaintiffs have not alleged enough to demonstrate a "fiduciary relationship" between them and the Defendants, including Brown. See King Cnty., Wash. V. IKB Deutsche Industriebank AG, 863 F. Supp. 2d 288, 314 (S.D.N.Y. 2012)(noting that a "fiduciary duty claim requires a closer relationship than the 'special relationship' necessary for a negligent misrepresentation claim"); Childers v. New York & Presbyterian Hosp., No. 13 CIV. 5414 (LGS), 2014 WL 2815676, at *15 (S.D.N.Y. June 23, 2014)("[T]he standard of a special relationship in the context of a negligent misrepresentation claim is less rigorous than that of a fiduciary duty.")(quoting Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 28 (S.D.N.Y.2009), aff'd sub nom. Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A., 382 Fed. Appx. 107 (2d Cir. 2010); see also Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc., No. 09-CV-3855 (JS)(WDW), 2014 WL 4374586, at *13 (E.D.N.Y. Aug. 29, 2014).

The Court also holds that the Plaintiffs' claims for aiding and abetting breach of fiduciary duty must be dismissed, because, under New York law, "'[a] claim for aiding and abetting a breach of fiduciary duty requires . . . a breach by a fiduciary of obligations to another.'" Uni-World Capital, L.P. v. Preferred Fragrance, Inc., No. 13 CIV. 7204 (PAE), 2014 WL 3610906, at *5 (S.D.N.Y. July 21, 2014)(quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d Cir. 2006)(quoting Kaufman v. Cohen, 307 A.D.2d 113, 760 N.Y.S.2d 157, 169 (1st Dep't 2003)).

E.  The Civil Conspiracy-Fraud Claim

The proposed amended complaint alleges that Brown was involved in a civil conspiracy to commit the underlying fraud.

At the outset, the Court notes that "[a plaintiff's] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a)." <u>M.E.S., Inc. v. Safeco Ins. Co. of Am.</u>, No. 10-CV-02798 (PKC)(VMS), 2014 WL 2931398, at *13 (E.D.N.Y. June 27, 2014); <u>U.S. v. Lloyds TSB Bank PLC</u>, 639 F. Supp. 2d 326, 336 (S.D.N.Y. 2009)("Rule 8(a) of the Federal Rules of Civil Procedure governs the sufficiency of these conspiracy allegations . . . .").

In any event, however, "[a] claim for civil conspiracy is only actionable if the complaint states a claim for the underlying tort." <u>Corbett v. eHome Credit Corp.</u>, No. 10-CV-26 (JG) (RLM), 2010 WL 1063702, at *3 (E.D.N.Y. Mar. 22, 2010)(citing <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 401 (2d Cir. 2006); <u>see also</u> <u>Fisher v. Big Squeeze (N.Y.) Inc.</u>, 349 F. Supp. 2d 483, 489 (E.D.N.Y. 2004). In this case, the Plaintiffs have failed to plead the alleged fraud with the requisite particularity. Accordingly, the proposed claim for civil conspiracy based on that fraud fails as a matter of law and is dismissed.

F.  The Civil Conspiracy-Breach of Fiduciary Duty Claim

Again, "in order to adequately plead a claim for civil conspiracy, a plaintiff must establish first the underlying tort that the parties have conspired to commit." <u>Hilton Head Holdings b.v. v. Peck</u>, No. 11 CIV. 7768 (KBF), 2012 WL 613729, at *5 (S.D.N.Y. Feb. 23, 2012). As previously held, the Plaintiffs have failed to adequately plead a claim for breach of fiduciary duty against Brown. Therefore, the proposed claim sounding in civil conspiracy to commit the asserted breach of fiduciary duty is dismissed.

G.  The Breach of Duty of Care Claim

The Plaintiffs also propose to assert a claim for breach of duty of care owed to them by the Defendants.

Typically, "[w]here a plaintiff alleges a breach of fiduciary duty by conduct not amounting to fraud, such as breach of a duty of care, disclosure, or loyalty, the general pleading standards set out by Rule 8(a) of the Federal Rules of Civil Procedure, not the heightened standards of Rule 9(b), apply." Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 196 (S.D.N.Y. 2006)(emphasis added); Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 00 Civ. 8688 (WHP), 2002 WL 362794, at *8 (S.D.N.Y. March 6, 2002)(Rule 9(b) did not apply where the defendant "may be found to have breached its fiduciary duty . . . by conduct not amounting to fraud, such as by breaching its duties of care, disclosure and loyalty"); see also Adelphia Recovery Trust v. Bank of Am., N.A., 624 F. Supp. 2d 292, 319 (S.D.N.Y. 2009).

However, here, the Plaintiffs assert that the Defendants "breached their duty of care by making warranties and representations under the Operating Agreement, including warranting that they had completed all necessary due diligence into the business, operations of the franchise agreements, and that the total capital contribution was sufficient to cover all costs to build-out the Roslyn Store as well as two other locations." (Amended Compl., at 61.)  Fairly read, this claim is rooted in fraud and Rule 9(b) applies irrespective of the formal styling of the claim as one seeking redress for a breach of the duty of care.

However, whether viewed under Rule 9(b) or Rule 8(a), the Court finds that the Plaintiffs' proposed breach of duty of care claim fails as a matter of law for the same reason the proposed breach of fiduciary duty claim failed – namely the failure to adequately plead the existence of a duty of care.  Indeed, the Plaintiffs allege that Brown owed a duty of care to them "pursuant to the Operating Agreement" and "breached [his] duty of care by making warranties and representations under the Operating Agreement." (Amended Compl., at 61.)  However,

again, as Brown is a non-signatory to the Operating Agreement, the Plaintiffs cannot engraft a duty of care owed by Brown to the Plaintiffs thereunder.  Accordingly, the Court dismisses the Plaintiffs' proposed breach of duty of care claims against Brown and that part of the Plaintiffs' cross-motion for leave to amend to assert that claim is denied as futile.

H.  Gross Negligence

The Plaintiffs allege that the misconduct of the Defendants, including Brown, rises to the level of gross negligence because it "exceeded the bounds of ordinary negligence." (Amended Compl., at ¶ 272.)

"To state a claim for gross negligence under New York law, [a plaintiff] must establish four elements: (1) the existence of a duty; (2) a breach of that duty; (3) 'injury as a result thereof;' and (4) conduct that 'evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing.'" Purchase Partners, LLC v. Carver Federal Sav. Bank, No. 09 Civ. 9687 (JMF), 2012 WL 6641633, at *13 (S.D.N.Y. Dec. 13, 2012)(quoting Farash v. Cont'l Airlines, Inc., 574 F. Supp. 2d 356, 367–68 (S.D.N.Y. 2008)(quoting AT & T v. City of N.Y., 83 F.3d 549, 556 (2d Cir. 1996)); Alley Sports Bar, LLC v. Simplexgrinnell, LP, No. 13-CV-6579 (EAW), 2014 WL 5804362, at *5 (W.D.N.Y. Nov. 7, 2014)(reciting elements of a claim for gross negligence under New York law).

Further, "a claim for gross negligence does not require the heightened pleading requirements of Rule 9(b)." Saltz v. First Frontier, LP, 782 F. Supp. 2d 61, 76 (S.D.N.Y. 2010) aff'd sub nom. Saltz v. First Frontier, L.P., 485 F. App'x 461 (2d Cir. 2012); Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 437 (S.D.N.Y. 2010)("claims for gross negligence, like claims of negligence, are governed by Rule 8(a), not Rule 9(b) of the Federal Rules of Civil Procedure.").

As gleaned from the proposed amended complaint, the Plaintiffs plead a duty of care, separate and apart from the Operating Agreement, owed by the Defendants to them. Purchase Partners, LLC, 914 F. Supp. 2d at 497 ("the duty giving rise to a gross negligence claim must be independent of the duty arising from a contract. That is, a party cannot sustain a tort claim if it 'does no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached.'")(citing Clarendon Nat'l Ins. Co. v. Health Plan Adm'rs, No. 08 Civ. 6279 (GBD), 2009 WL 3053736, at *3 (S.D.N.Y. Sept. 24, 2009)(citing Metro. W. Asset Mgmt., No. 03 Civ. 5539 (NRB), 2004 WL 1444868, at *9 (S.D.N.Y. June 25, 2004)). The Plaintiffs also allege damages and "intentional" and "reckless disregard for [that] duty" by the Defendants. (Amended Compl., at ¶ 272.)

At first glance, it would appear that the Plaintiffs have stated a claim, as required by Rule 8(a), for gross negligence under New York law. However, where the claim, such as gross negligence, is not rooted in fraud, the Plaintiffs cannot hide behind "group pleading" of the sort here that fails to distinguish between the defendants, including Brown. Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001)("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [Rule 8's] minimum standard."); Zalewski v. T.P. Builders, Inc., No. 1:10–CV–876 (GLS)(RFT), 2011 WL 3328549, at *5 (N.D.N.Y. Aug.2, 2011) ("The court will not accept . . . vague group pleading to serve as a basis for liability.").

Accordingly, the Court grants that part of Brown's motion to dismiss the proposed gross negligence claim and that part of the Plaintiffs' cross-motion for leave to amend to assert that claim is denied as futile.

I.  The NYFSA Claim

As noted above, the Plaintiffs also allege violations on the part of Brown of the NYFSA,
namely Sections 683 and 687.  The NYFSA regulates the registration of franchises in New York
State and enumerates detailed requirements for companies establishing, advertising, and selling
franchises.  These requirements are designed to provide prospective franchisees with accurate
information regarding a given franchise offering and to prevent fraud in the sale of franchises.
N.Y. Gen. Bus. Law. At § 680.  "Given the Franchise Sales Act's remedial goals, courts have
held that its anti-fraud provisions should be interpreted liberally." Vysovsky v. Glassman, No. 01
CIV. 2531 (LMM), 2007 WL 3130562, at *8 (S.D.N.Y. Oct. 23, 2007), vacated and remanded
on other grounds sub nom. Kroshnyi v. U.S. Pack Courier Servs., Inc., No. 11-2789-CV, 2014
WL 5572456 (2d Cir. Nov. 4, 2014); see A.J. Temple Marble & Tile, Inc. v. Union Carbide
Marble Care, Inc., 162 Misc. 2d 941, 941-42 (Sup. Ct. N.Y. County 1994), affirmed, 625
N.Y.S.2d 904 (1st Dep't1995), leave to appeal granted, 628 N.Y.S.2d 478 (1st Dep't 1995),
affirmed as modified, 87 N.Y.2d 574, 663 N.E.2d 890 (1996).

As a preliminary matter, the Court notes that the fact that this claim is statutory in nature
does not, by itself, preclude application of Fed. R. Civ. P. 9(b).  "Were th[at] the case, Rule 9(b)
would not apply to claims under the Racketeer Influenced Corrupt Organizations Act (RICO), or
to statutory wire fraud and mail fraud claims.  It is beyond dispute that FRCP 9(b) does apply to
these statutory claims." United States v. Crescent City, E.M.S., Inc., 151 F.R.D. 288, 290 (E.D.
La. 1993).

Curiously, the parties fail to cite, and the Court has uncovered no case law directly
addressing whether claims brought under the NYFSA must comply with the heightened pleading
standards of Fed. R. Civ. P. 9(b).  A case coming close to addressing this question, Zaro

<u>Licensing, Inc. v. Cinmar, Inc.</u>, 779 F. Supp. 276 (S.D.N.Y. 1991), appears to have ruled, *sub silento*, that Rule 9(b) does not apply to such claims. <u>Id.</u> at 287 ("The Franchisees' Counterclaims under the New York Franchise Sales Act, the New Jersey Franchise Practices Act and the Connecticut Unfair Trade Practices Act are dismissed under Rule 56. The remaining federal RICO and state Counterclaims are dismissed under Rules 8 and 9(b) of the Federal Rules of Civil Procedure, with leave to replead granted.").

On the one hand, the fact that "the [NYFSA] was enacted specifically to prevent, combat and protect the franchisee from rampant franchise sales fraud," <u>A.J. Temple Marble & Tile, Inc.</u>, 618 N.Y.S.2d at 161, lends support to Brown's position that Rule 9(b) should apply to such claims. On the other hand, the NYFSA contains provisions, such as § 683 – which governs disclosure requirements and upon which the Plaintiffs premise their proposed claim in part – that while likely have the indirect effect of combating fraud do not, by their terms, proscribe fraudulent conduct. N.Y. Gen. Bus. L. § 683 ("[i]t is unlawful and prohibited for any person to offer to sell or sell in this state any franchise unless and until there shall have been registered with the department of law, prior to such offer or sale, a written statement to be known as an 'offering prospectus' concerning the contemplated offer or sale, which shall contain the information and representations set forth in and required by this section.").

The answer to the presence of § 683 in the NYFSA, of course, may be that Rule 9(b) applies to claims brought under certain sections of the NYSFA, namely the anti-fraud provisions, and not to others, namely the disclosure provisions. Stated otherwise, the question of the application of Rule 9(b) to the NYFSA is likely not an "all or nothing" answer.

However, the Court need not decide whether the Plaintiffs proposed NYFSA claim against Brown is subject to the heightened pleading requirements of Rule 9(b) or the liberal

notice pleading requirements of Rule 8(a).  This is because, with respect to the alleged violations of § 683 and of § 687 of the NYFSA, the Plaintiffs satisfy either standard.

First, as to § 683 of the NYFSA, the proposed amended complaint asserts that the Defendants

> fail[ed] to make proper disclosure or provide a prospectus prior to selling or attempting to sell the franchises to Plaintiffs, (2) fail[ed] to register an offering prospectus with the NY [Attorney General]'s Office, and (3) fail[ed] to disclose "financial performance representations" in the proper manner (e.g. by failing to include them in an offering prospectus, with a proper statement setting forth the data methods and computations upon which the financial performance representations were based) (4) fail[ed] to provide the most current year's financial performance information, and (5) allow[ed] disclosure to become "stale" and not providing new disclosure for 2011 prior to the execution of the Aug. 3, 2011 agreement for the Roslyn store.

(Amended Compl., at ¶ 282.)  While Brown disputes these underlying factual allegations, in his motion papers, he fails to identify a basis to dismiss this claim other than to make generalized references to Rule 9(b).  However, even if Rule 9(b) applies to claims brought for alleged violations of § 683 of the NYFSA, the Court finds that the Plaintiffs plainly state such a claim with respect to Brown.

With respect to the alleged violations of § 687 of the NYFSA, the Plaintiffs allege that the Defendants "ma[de] false or materially misleading oral and written representations" (Id. at ¶ 275.)  In the Court's view, the Plaintiffs set forth sufficient factual allegations to state a violation of § 687 of the NYFSA.

To be sure, for purposes of their NYFSA claim, the Plaintiffs engage in precisely the type of "group pleading" that was fatal to their gross negligence claims.  However, it not clear that such pleading is prohibited with respect to NYSFA claims, particularly given the statute's provision for "control person" liability under §691(3) for an individual merely by virtue of their position in an entity liable for NYSFA violations.  That

subsection provides: "A person who directly or indirectly controls a person liable under this article, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids in the act of transaction constituting the violation, is also liable jointly and severally with and to the same extent as the controlled person, partnership, corporation or employer."

Section 691(3) further provides that "[i]t shall be a defense to any action based upon such liability that the defendant did not know or could not have known by the exercise of due diligence the facts upon which the action is predicated." Id. However, even if Brown had invoked this language here, at the motion to dismiss stage, the Court cannot opine on the merits to any such defense to the NYFSA action.

As a final matter, the Court finds that the Plaintiffs have adequately plead a request under Section 691 of the NYFSA "for rescission, with interest at six percent per year from the date of purchase, and reasonable attorney fees and court costs" based on the "wil[l]ful" conduct of the Defendants, which only requires a claim of intentional conduct. (See Amended Compl., at ¶¶ 284, 286); see Mister Softee, Inc. v. Tsirkos, No. 14 CIV. 1975 (LTS)(RLE), 2014 WL 2535114, at *7 (S.D.N.Y. June 5, 2014)("[c]ourts have held that, to demonstrate wilfulness within the meaning of Section 691, 'the plaintiff need only show that the defendants intentionally violated the Act.'")(citation omitted); Vysovsky, 2007 WL 3130562, at * 12 ("For purposes of the Franchise Sales Act, 'willful' means no more than voluntary or intentional, as opposed to inadvertent.").

For the foregoing reasons, the Court denies that part of Brown's motion to dismiss the proposed NYFSA claim and that part of the Plaintiffs' cross-motion for leave to amend to assert that claim is granted.

J.   The NYCPA Claim

As noted above, the Plaintiffs also propose to allege a claim under the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349(a)(the "NYCPA") against Brown. That statute provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in furnishing of any service in this state are hereby declared unlawful."  "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Wurtz v. Rawlings Co., LLC, No. 12-CV-01182 (JFB)(AKT), 2014 WL 4961422, at *7 (E.D.N.Y. Oct. 3, 2014)(citations and quotation marks omitted).

"It is not necessary for the plaintiff to demonstrate that the defendant acted intentionally or with scienter." Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 403–04 (S.D.N.Y. 2010)(citing Watts v. Jackson Hewitt Tax Serv. Inc., 579 F. Supp. 2d 334, 346 (E.D.N.Y.2008)); M & T Mortg. Corp. v. White, 736 F. Supp. 2d 538, 570 (E.D.N.Y. 2010)("[A] Section 349 claim need not include proof of intent to deceive, scienter, or justifiable reliance.").

"[B]ecause § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the barebones

notice-pleading requirements of Rule 8(a)." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005)(internal citations omitted).

The consumer-oriented element of a N.Y. GBL § 349 claim "'has been construed liberally.'" Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 449 (E.D.N.Y. 2013)(quoting New York v. Feldman, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002)). "Consumer-oriented" has been defined in this Circuit as "conduct that potentially affects similarly situated consumers." SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996) (internal citation and quotation marks omitted). As the New York Court of Appeals has stated, "[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995).

Instead, the critical question is whether "the acts or practices have a broad[ ] impact on consumers at large." Id.; see e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 51–53 (2d Cir. 1992)(following an appeal from a jury verdict, holding that the plaintiffs satisfied the "consumer-oriented" element of a N.Y. GBL § 349 claim against an insurance company by presenting evidence that the insurance company had engaged in similar practices against other policyholders). "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." Feldman, 210 F. Supp. 2d at 301 (collecting cases).

That said, "[f]or a claim to classify as 'consumer-oriented,' a plaintiff must plead and prove injury to the public generally, rather than to himself alone." Newman v. Mor, No. 08CV658 (RJD)(CLP), 2009 WL 890552, at *5 (E.D.N.Y. Mar. 31, 2009). "'Single shot transactions' or '[p]rivate contract disputes, unique to the parties' are not governed by section

349." Delgado v. Ocwen Loan Servicing, LLC, No. 13-CV-4427 (NGG)(RML), 2014 WL 4773991, at *7 (E.D.N.Y. Sept. 24, 2014)(citations omitted); see also MaGee v. Paul Revere Life Ins. Co., 954 F. Supp. 582, 586 (E.D.N.Y. 1997)("[T]he injury must be to the public generally as distinguished from the plaintiff alone.").

In this case, although not argued by Brown, the Courts finds that the Plaintiffs have failed to plausibly allege that any alleged deceptive acts or practices orchestrated by Brown were "consumer-oriented" and injured the public generally.

The Plaintiffs allege that the Defendants' conduct "impact[ed]" the public (Amended Compl., at ¶ 290.) and "have damaged other similarly situated New York consumers, including but not limited to three other MHF franchisees in New York." (Id. at ¶ 291.). It is not clear whether this type of "group pleading" is permissible under the NYCPA. However, even assuming "group pleading" may be appropriate in this regard, the facts alleged do not support the conclusion that the complained-of conduct was "consumer-oriented," even under notice pleading standards. Compare Corbin v. Wilson, No. 10-CV-3156 (NGG)(RER), 2011 WL 4374213, at *2 (E.D.N.Y. Aug. 26, 2011)("Merely alleging that conduct was aimed at the general public is not sufficient to state a cause of action."), report and recommendation adopted, No. 10-CV-3156 (NGG)(RER), 2011 WL 4381152 (E.D.N.Y. Sept. 19, 2011); Fleurentin v. McDowell, No. 05–CV–4274 (ARR)(CLP), 2009 WL 2969686, at *6 (E.D.N.Y. Sept. 16, 2009)(finding upon the defendant's default that plaintiff failed to establish "consumer-oriented" activity where despite broad allegations that defendant participated in schemes to defraud the public, plaintiff failed to state with any particularity how the public was injured) with Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 51–53 (2d Cir. 1992)(holding that section 349 was applicable to insurers where the plaintiffs demonstrated that similar practices had been employed by the defendant

against multiple insureds); Joannou v. Blue Ridge Ins. Co., 289 A.D.2d 531, 531, 735 N.Y.S.2d 786 (Mem), 2001 N.Y. Slip Op. 10979 (2d Dep't 2001)(holding that "[a]n insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349")(citations omitted).

Indeed, the Plaintiffs' statements concerning the "impact" of the Defendants' allegedly unlawful conduct is conclusory language that, in essence, "[impermissibly] parrots decisions of the New York Court of Appeals." Corbin, 2011 WL 4374213, at *3. In actuality, the factual allegations actually described transactions unique to the Plaintiffs and the Defendants — akin to a private contract dispute. Brooks v. Key Trust Co. Nat'l Ass'n, 26 A.D.3d 628, 630–31, 809 N.Y.S.2d 270 (3d Dep't 2006)(affirming the dismissal for failure to state a claim under GBL § 349 where plaintiff's allegations established that the transactions concerned acquiring consumer loans, but where the remaining allegations evinced inducement to invest with advice directly to the plaintiffs).

Furthermore, the transactions described in the proposed amended complaint, like securities transactions, were undertaken as investments, not purchased as goods or services to be consumed or used, and so fall outside of the statute's protection. See e.g., Gray v. Seaboard Sec., Inc., 14 A.D.3d 852, 853, 788 N.Y.S.2d 471 (3d Dep't 2005)(explaining that the purchase of securities is not "consumer-oriented" because unlike typical consumer products "such as vehicles, appliances or groceries . . . securities are purchased as investments, not as goods to be 'consumed' or 'used.'"); Lynch v. McQueen, 309 A.D.2d 790, 792, 765 N.Y.S.2d 645 (2d Dep't 2003)(finding that the plaintiff failed to state a claim under GBL § 349 where a stockbroker/licensed insurance agent convinced the plaintiff to transfer financial instruments to

the defendants to manage, and to purchase life insurance policies since this conduct was not

"consumer-oriented or 'part of a pattern directed at the public generally'").

Accordingly, the Plaintiffs have failed to plead sufficient allegations to establish liability

on the part of Brown under GBL § 349. That part of Brown's motion to dismiss the proposed

NYCPA claim is granted and that part of the Plaintiffs' cross-motion for leave to amend to assert

that claim is denied as futile.

K.  The NHCPA claim

The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. Ch. 358–A (the

"NHCPA") "is a comprehensive statute whose language indicates that it should be given broad

sweep." Roberts v. General Motors Corp., 138 N.H. 532, 538, 643 A.2d 956 (1994).

Pursuant to the Act,

> It shall be unlawful for any person to use any unfair method of competition or any
> unfair or deceptive act or practice in the conduct of any trade or commerce within
> this state.

N.H. Rev. Stat. § 358–A:2. "Although the NHCPA provides a non-exclusive list of prohibited

conduct, the statute precludes only those '*types* of [acts] therein particularized.'" In re Methyl

Tertiary Butyl Ether (MTBE) Products Liab. Litig., 379 F. Supp. 2d 348, 419 (S.D.N.Y.

2005)(citation omitted). "In other words, a plaintiff's claim must fall within the [fourteen]

enumerated categories in order to be actionable." Id.

Although the substantive requirements of the NHCPA are governed by the laws of New

Hampshire, "any pleading requirements are governed by federal law, which controls procedural

matters in diversity cases." Leonard v. Abbott Labs., Inc., No. 10-CV-4676 (ADS)(WDW), 2012

WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012). "Whether [the] Plaintiffs' claims must comply

with the pleading burdens imposed by Fed. R. Civ. P. 9(b) by virtue of the complaint 'sounding

in fraud' or being 'grounded in fraud' is an issue of federal law, not state law." <u>Ackerman v. Coca–Cola Co.</u>, No. 09–CV–395 (JG)(RML), 2010 WL 2925955, at *18 n. 31 (E.D.N.Y. July 21, 2010).

Here, this Court is bound by the law of Second Circuit. <u>See</u> <u>Northwestern Mut. Life Ins. Co. v. Banc of America Securities LLC</u>, 254 F. Supp. 2d 390, 396 (S.D.N.Y. 2003)("[B]ecause Rule 9(b) is a rule promulgated pursuant to a federal statute, this Court is required to follow the precedent of the Court of Appeals for the Second Circuit with respect to the interpretation and application of Rule 9(b)."). Thus, the relevant issue is whether the Second Circuit would apply Rule 8(a) to the NHCPA. <u>See</u> <u>Keegan v. Am. Honda Motor Co., Inc.</u>, ―― F. Supp. 2d ――, 2012 WL 75443, at *2l-*22 (C.D. Cal. 2012)(acknowledging that although the Second Circuit under <u>Pelman</u> would apply Rule 8(a) to the plaintiffs' NYCPA claim, it was bound by Ninth Circuit precedent to apply Rule 9(b) to the NYCPA claims).

The lone case on point in this circuit, <u>Leonard</u>, coincidentally was decided by this Court. In that case, the Court applied Rule 8(a) to the plaintiffs' NHCPA claim. In doing so, this Court relied in part on the "the similarities" between the NYCPA and the NHCPA, including the fact that neither required elements of reliance or *scienter*. 2012 WL 764199, at *20.

Of relevance here, courts in the First Circuit, where New Hampshire is situated, apply a more searching analysis to determine whether the underlying factual allegations supporting the NHCPA claim, in fact, sound in fraud. <u>See e.g.</u>, <u>Gwyn v. Loon Mountain Corp.</u>, No. 01-00214-B, 2002 WL 1012929, at *7 (D.N.H. May 15, 2002)("By basing its CPA claim upon alleged misrepresentations and further asserting that the misrepresentations constituted a knowing and willful violation of the CPA, plaintiffs have in essence accused defendant of fraud. Where an allegation of fraud lies at the core of a cause of action, the heightened pleading standards of Fed.

R. Civ. P. 9(b) apply.").  With respect to other state consumer protection statutes, other courts take a similar approach. <u>Frith v. Guardian Life Ins. Co. of America</u>, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998)(applying Rule 9(b) to a fraud-based claim that the defendant violated the Texas CPA).

In this case, the Plaintiffs allege that Brown "materially aided in the acts of the transactions constituting the violations of the NHCP and FTC Franchise Rule by MH Franchising by, among other things, making the aforementioned false or materially misleading oral and written representations as to the future financial performance of [the] Plaintiffs' prospective locations, of existing franchisee locations, and of corporate locations." (Amended Compl., at ¶ 301.)  The Plaintiffs further allege that Brown "made the aforementioned false or materially misleading statements of fact regarding the profits, losses and revenues of franchisee locations and corporate-owned Meat House stores during 2009 and 2010, and financial projections regarding Plaintiffs' return on their investment, and made the aforementioned false statements in their FDD." (<u>Id.</u>)  Given that these allegations mirror the allegations supporting the fraud claims, application of Rule 9(b) would appear to be appropriate, notwithstanding the ruling in <u>Leonard</u>.

Further, is not clear whether this type of "group pleading" is permissible under the NHCPA.  The fact that New Hampshire law pertaining to limited liability companies provides that the "debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the limited liability company" and "[n]o member or manager of a limited liability company shall be obligated personally for any such debt, obligation, or liability of the limited liability company <u>solely</u> by reason of being a member or acting as a manager of the limited liability company,"

N.H. Rev. Stat. Ann. § 304–C:23 (emphasis added), counsels against the permissibility of "group pleading" under the NHCPA. See generally Mbahaba v. Morgan, 163 N.H. 561, 564, 44 A.3d 472, 476 (2012).

However, even assuming that "group pleading" may be appropriate and that Rule 8(a) is more appropriately applied to the Plaintiffs' proposed claim under the NYCPA, the claim fails on another ground – that is, it does not properly fall into any of the enumerated categories under the NHCPA. That statute prohibits the following conduct:

> N. Passing off goods or services as those of another;
>
> N. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> N. Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
>
> IV. Using deceptive representations or designations of geographic origin in connection with goods or services;
>
> V. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that such person does not have;
>
> VI. Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;
>
> VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> VIII. Disparaging the goods, services, or business of another by false or misleading representation of fact;
>
> IX. Advertising goods or services with intent not to sell them as advertised;
>
> X. Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

X-a. Failing to disclose the legal name, street address, and telephone number of the business under RSA 361-B:2-a;

XI. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

XII. Conducting or advertising a going out of business sale:
(a) Which lasts for more than 60 days;
(b) Within 2 years of a going out of business sale conducted by the same person at the same location or at a different location but dealing in similar merchandise;
€Which includes any goods, wares, or merchandise purchased or received 90 days prior to commencement of the sale or during the duration of the sale and which are not ordinarily sold in the seller's course of business;
(d) Which includes any goods, wares, or merchandise ordered for the purpose of selling or disposing of them at such sale and which are not ordinarily sold in the seller's course of business;
€Which includes any goods, wares, or merchandise consigned for the purpose of selling or disposing of them at such sale;
(f) Without conspicuously stating in any advertisement for any such sale, the date such sale is to commence or was commenced;
(g) Upon the conclusion of which, that business is continued under the same name or under a different name at the same location; or
(h) In a manner other than the name implies.

XIII. Selling gift certificates having a face value of $100 or less to purchasers which contain expiration dates. Gift certificates having a face value in excess of $100 shall expire when escheated to the state as abandoned property pursuant to RSA 471-C. Dormancy fees, latency fees, or any other administrative fees or service charges that have the effect of reducing the total amount for which the holder may redeem a gift certificate are prohibited. This paragraph shall not apply to season passes.

XIV. Pricing of goods or services in a manner that tends to create or maintain a monopoly, or otherwise harm competition.

N.H. Rev. Stat. Ann. § 358-A:2.  Effective January 1, 2015, the NHCPA will also prohibit "XV. Failure of a facility, as defined in RSA 161-M:2, or person to comply with the provisions of RSA 161-M regarding the senior citizens bill of rights" and "XVI. Failing to deliver home heating fuel in accordance with a prepaid contract."

Of course, the above-mentioned categories of conduct are non-exhaustive.

N.H. Rev. Stat. Ann. § 358-A:2 ("Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following . . .")(emphasis added). However, again, the statute precludes only those '*types* of [acts] therein particularized.'" In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig., 379 F. Supp. 2d at 419 (citation omitted).

In the present case, the gravamen of the proposed amended complaint is that the Defendants, including Brown, pitched certain investment ventures directly to the Plaintiffs, and induced them to invest by making false and misleading representations about the financial profitability of The Meat House franchise system and the Plaintiffs' ability to obtain a return on those investments. In the Court's view, such allegations do not fall within "the type" of conduct proscribed by the NHCPA.

Accordingly, the Plaintiffs have failed to plead sufficient allegations to establish the liability of Brown under the NHCPA. That part of Brown's motion to dismiss the proposed NHCPA claim is granted and that part of the Plaintiffs' cross-motion for leave to amend to assert that claim is denied as futile.

L.  The Breach of Duty of Good Faith and Fair Dealing claim

To establish a claim for breach of the duty of good faith and fair dealing: "(1) [the] defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) [the] defendant must breach that duty; and (3) the breach of duty must proximately cause [the] plaintiff's damages." Champagne v. United States, —— F. Supp. 2d ——, ——, 2014 WL 1404566, at *9 (N.D.N.Y. Apr. 10, 2014); In re Tremont Sec. Law, State Law, & Ins. Litig., No. 08–CV–11117 (TPG), 2013 WL 5393885, at *8 (S.D.N.Y. Sept. 26, 2013)(stating elements); Washington v. Kellwood Co., No. 05–CV–10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009)(same). "'[T]he covenant of good faith and fair dealing is implicit in every

contract' under New York law . . . ." Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank, 552 F. App'x 13, 16 (2d Cir. 2014)(quoting Consol. Edison, Inc. v. Ne. Utils., 426 F.3d 524, 529 (2d Cir. 2005)).

It follows then that, under New York law, "a non-signatory cannot be held liable for breach of the implied covenant of good faith and fair dealing, because there is no contract between the two parties under which to find such an implied term." Atari, Inc. v. Games, Inc., No. 04 CIV. 3723 (JSR), 2005 WL 447503, at *2 (S.D.N.Y. Feb. 24, 2005) aff'd, 164 F. App'x 183 (2d Cir. 2006); see EEOC v. Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)("It goes without saying that a contract cannot bind a nonparty.").

While it is true that a non-signatory can be named as a defendant if he or she "is in privity with the plaintiff or has assumed the obligations of the contract," ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 73 (S.D.N.Y.1999), none of the Plaintiffs are in privity with Brown, nor has Brown assumed any obligations under the relevant agreements.  Although a non-signatory can also be named as a defendant if he is the alter ego of the signatory, see Int'l Customs Assocs. v. Ford Motor Co., 893 F. Supp. 1251, 1256-57 (S.D.N.Y. 1995)(collecting cases), the alter ego test is a stringent one, requiring, among other things, that the non-signatory have no real identity independent of the signatory, not simply that the entities are closely related. Here, the proposed claim for breach of the duty of good faith and fair dealing contains no allegations on which such a test could be met.

Accordingly, the proposed claim for breach of the covenant of good faith and fair dealing is dismissed as to Brown.  That part of Brown's motion to dismiss this claim is granted and that part of the Plaintiffs' cross-motion for leave to amend to assert that claim is denied as futile.

## II.  CONCLUSION

Based on the foregoing reasons, Brown's motion to dismiss pursuant to Rule 9(b), considered as directed at the proposed amended complaint, is granted in part and denied in part. In particular, Brown's motion to dismiss is denied as to the Plaintiff's claims for (1) negligent misrepresentation under New York law and (2) violations of the NYFSA.  Brown's motion is otherwise granted.

Concurrently, the Plaintiff's motion pursuant to Rule 15(a) for leave to file an amended complaint is granted in part and denied in part.  The motion is granted as to the Plaintiffs claims for negligent misrepresentation and violations of the NYFSA.

**SO ORDERED.**
Dated: Central Islip, New York
November 17, 2014

_____*Arthur D. Spatt*_____
  ARTHUR D. SPATT
United States District Judge